May it please the Court, Miller Baker on behalf of Appellate Pharmaceutical Care Management Association. Reversal of the District Court decision is compelled by circuit precedent, which the District Court below sidestepped. I'd like to begin with the risk of preemption. There's a line of, first, as the Court knows, there are two prongs of risk of preemption. There's the reference to prong and the connection with prong. I'd like to begin with the reference to prong of a risk of preemption. A line of this Court's cases, Prudential 1, Gearhart and Rutledge, holds that state laws that regulate by implicit references to ERISA plans and non-ERISA entities trigger reference to preemption because a law is essential to the law's operation. Now the District Court said, well, this can't be right because this would be inconsistent with the Supreme Court's cases in Dillinghan and Travelers. A couple of other circuits have agreed with that, haven't they? Your Honor, depending upon which circuit you're referring to, yes, there is a split in the circuits that is correct, although the extent of which I think has been exaggerated. Isn't one of our cases also pending cert, maybe? That's correct. Rutledge. Rutledge. Yeah. That's correct. So Rutledge is pending, but my friend's quarrel is fundamentally with this Court's precedent, right? And so is the District Court's. And this Court in Prudential 1 decided the question whether or not it actually considered Dillinghan and Travelers. And the Court said that we've considered both Travelers and Dillinghan, and neither one narrowed the reference to preemption as explained by the Supreme Court in the Greater Washington Border Trade case. And that's at 154 F. 3rd at 822 in the Prudential 1 case, where the Court specifically considered Dillinghan and Travelers and said, we still think that this is consistent with the Greater Washington case. Now, my friend argues that Greater Washington requires that the state law cease to operate. That's on page 20 of the state's brief, that Greater Washington requires that the state law, quote, cease to operate. And the emphasis is in the original in the brief. The Court will do a search through Westlaw and find that there is no reported case involving a reciprocation in which that phrase is used, cease to operate. This is just an argument from the state's counsel characterizing Greater Washington, but the language in Greater Washington does not support that proposition. In Greater Washington, the Court specifically recognized, page 106 U.S. at 131 in note 3, that regulation of ERISA and non-ERISA, that is the regulation of non-ERISA entities, in addition to the regulation of ERISA entities, still triggers reference to preemption. So the fundamental problem with the District Court and my colleague is that they simply don't like this Court's precedence. Well, it is what it is, Your Honor. I'd like to turn now to the connection with prong of ERISA preemption. Gearhart and Rutledge and this Court's decision in Associated Builders also govern connection with preemption. So in general, as this Court recognized in Gearhart, ERISA preempts laws that impose requirements of PBMs for the management and administration of ERISA benefits. Now, there are two provisions of the North Dakota statute that regulate claim reimbursement and thus plan administration. And we divided the – there's a multiplicity of statutory provisions here. And for simplicity's sake, we've categorized them into four different buckets. So we have claim reimbursement and we've identified those provisions on 19 and 20 of our brief. And these provisions directly interfere with disbursement and processing of claims  Then on page 21 of our brief, we go through the bucket of provisions in the statute that regulate benefit structures. And there are several. And these provisions, for example, authorize pharmacies to deliver drugs to a patient by mail. Notwithstanding, the plan may not want the pharmacy to do so because according to the plan specifications, the pharmacy lacks the required capabilities or experience to do that. Accreditation. So PBMs require pharmacies to satisfy, in addition to their state law standards for performing pharmaceutical services, PBMs require that pharmacies satisfy additional higher or heightened standards to protect the safety of their members. There's a provision in the statute, 16.25, that allows a pharmacy to dispense any and all drugs allowed under its license. Notwithstanding, again, that the pharmacy may not want to allow, there's the PBM, may not want to allow that pharmacy to dispense that particular drug because of the limitations in that particular pharmacy's capabilities. So we've gone through these and the summary judgment record demonstrates that all these requirements will interfere with national uniform structure. That is, these... What's the interference? The interference is having to modify interstate benefit plans to comply with these regulatory requirements. How many states are enacting laws similar to this? Your Honor, we are, there are, different states regulate PBMs as a basic licensing, but there are relatively a handful of states that have imposed what I would characterize as onerous requirements of the type that we have here in North Dakota. This goes, all these provisions go to the, again, how the plan is going to construct and provide its benefits. And you have to change your plan. We have, again, undisputed summary judgment record evidence demonstrating that the plan will have to change, it's modified national plans to conform to this, these North Dakota provisions. And the case law is clear that states can't dictate to benefit plans how they determine, how they structure their benefits. That is, what benefits they provide and how they actually provide them. And that's what this Court actually said in Associated Builders. A law dictating how benefits is to be provided has a connection with preemption. A very instructive case is the Fifth Circuit's decision in Cigna, in which Louisiana required ERISA plans to use any willing provider that wanted to contract, that wanted to provide services to the plan. And the Fifth Circuit said, no, this has a connection with ERISA, because you're requiring the plan to structure its benefits in conformity with state, you're dictating the choice to the plan about which providers to use. And if the Supreme Court is clear about anything in this whole area of law, it's that, to quote from Travelers, you can't dictate choices to a plan regarding plan structure and administration. That is, how the benefits are going to be provided, which benefits are going to be provided, and how the plan is going to administer itself. Then on page 23 and 24 of our brief, we have the benefit calculations. Again, these provisions are clearly preempted under this Court's decision in Gearhart. And finally, pages 24 to 25 of our brief, we go through the bucket list, if you will, of disclosure and recordkeeping provisions that are clearly preempted under Gearhart and Gobel. In Gearhart, there was a disclosure provision requiring pharmacies, excuse me, plans to make certain disclosures to pharmacies. And this Court held that it was preempted. I thought the North Dakota law applied to pharmacists disclosing information, and that's certainly within what states have always regulated. Your Honor, it depends upon what the issue is. So again, we've been very clear about what we're challenging. So if it's disclosure about plan activity, we have no quarrel with a state law that says a pharmacy can disclose information about the efficacy of the medication or how to use it. Obviously, we're not contesting that. What we are contesting is a requirement that a pharmacy be permitted, notwithstanding a plan contract with a pharmacy, to make disclosures to the plan member about reimbursement issues, that the plan member is not interested in reimbursement. And the pharmacy has no business in making disclosures to a plan. And we have, again, we have different categories. We have pharmacy disclosures to plan members. Section 16.14 prohibits a PBM from redacting the adjudicating cost. Now, here we have Supreme Court guidance that disclosure that's central and essential to a uniform plan of a risk administration, that that is preempted, but they can do anything else, right? No. How do you say it? The Gobeil case or Gobeil case? The Vermont case? Yes, Gobeil. Yes, Your Honor. So what the Supreme Court says, disclosure is a fundamental area of ERISA regulation. Disclosure, fiduciary duty, there's a litany that the Supreme Court has recounted over and over again, and it's quoted again in Gobeil. So ERISA regulates disclosures, and that is the beginning and the end of the inquiry. Because ERISA regulates disclosures, the states can't supplement or add to that and add additional disclosures that ERISA does not require. So, as I said, we have the statute requires pharmacy disclosures to plan members that are irrelevant to the particular efficacy of the drug. It requires disclosure pharmacy to plans. It requires PBM disclosures to plans, and then it requires PBM and plan disclosures to pharmacies. For example, 16.110 requires plans and PBMs and requests to provide pharmacies with a processor number. This is all controlled by Gobeil and Gerhardt, Your Honor. Finally on ERISA, I would like to say that this court should direct entry of judgment for PCMA on ERISA and don't remand for consideration of the Insurance Savings Clause. The state did not raise this defense in connection with PCMA's request for a preliminary injunction. They did not raise this law. It was raised sui sponte by the district court. The state then filed its answer. They did not raise this defense, and it is an affirmative defense. I have a citation for that proposition. It's Level 3 Communications v. City of St. Louis, 477 F. 3rd, 528 at 531.32. This is an affirmative defense that they could have raised in their answer if they really believed it, but they don't believe it. This was raised sui sponte by the district court. They didn't raise it. They didn't put it in their answer. We raised it initially in the motion for summary judgment, and then they responded. The district court didn't rule on it. This is just about delay. If the state really believed in its insurance savings defense, it would have raised it on appeal. It would have raised it in its opposition to RPI and would have put it in its answer. So we respectfully request that the court not only reverse, but remand with instructions to enter judgment on PCMA's ERISA preemption claim. Now I'd like to turn to Medicare preemption. Rutledge is controlling precedent, and under the legal standard agreed to by the parties in that case, the challenge statutes here operate with respect to federal standards established by statute or regulation. First, we have the Any Willing Pharmacy statutory provision. The statute requires that plans permit pharmacy participation by pharmacies that are willing to comply with the plan's terms and conditions. The statute is very clear. If a pharmacy wants to participate in a Medicare Part D plan, it has to agree to the plan's terms and conditions. That provision alone, applying Rutledge, is sufficient alone to reverse and enter judgment for PCMA. In addition, we have the reasonable and relevant standard. That is, there's a CMS regulation that requires planned pharmacy contracts with any willing provider to be reasonable and relevant. So CMS is the judge of whether something is reasonable or relevant. There's a federal standard, and so under the Rutledge standard, the state regulations here act upon those standards. Either alone are those sufficient to decide the Medicare preemption issue. I'd also like to note that, as we indicated in our brief, we believe that the Rutledge standard, while it is correct, is under-inclusive. That is to say, the Rutledge standard of does a state law act with respect to a federal standard, that is under-inclusive of the full scope of preemption. We contend, respectfully, that in an issue that was not presented in Rutledge, but that this Court should decide that the scope of Medicare Part D preemption or Medicare preemption is actually coterminous with the scope of ERISA preemption, and that is because the structural similarity between the two express provision clauses. We have quoted that in our brief, and both provisions require that the state laws in question operate with respect to plans. The key language under the Supreme Court's decision relates to, in the Supreme Court's decision in Morales, interpreting another statute that had an express preemption provision that was very similar to ERISA, used the term relates to as a relating to as opposed to relates to, and the Supreme Court said because of the structural similarity in these statutes, we have to construe the Airline Deregulation Act preemption provision as coterminous with ERISA preemption. We contend that the statutory provisions here are structurally identical for purposes of determining the scope of preemption. That's on page 28 of our brief. So that part you think Rutledge is wrong, right? It's not that I'm wrong. I would say Rutledge is incomplete. Rutledge is a subset of the full scope of Medicare preemption, and that's because the parties didn't argue it. The parties all agreed that if a state law acts with respect to a state standard, then it's preempted, but the court did not consider the question. In fact, no court has considered the question whether or not ERISA and Medicare Part D actually are coterminous in terms of the scope of their preemption provisions, but we contend because of the structural similarity of their language of the two provisions and because of the Supreme Court's decision in Morales and because Congress in 2003 decided to narrow the scope of ‑‑ excuse me, to broaden the scope of Medicare preemption, and it would be ‑‑ it defies credulity to think that Congress says, okay, we're going to broaden preemption from what is effectively conflict preemption to merely an overlap standard. Counsel, you're well into your rebuttal. Yes, Your Honor. With that, I will reserve the balance of my time for the rebuttal. Thank you, Your Honor. Mr. Smith. Thank you, and may it please the Court. The North Dakota laws at issue here do three things. First, they regulate the practice of pharmacy. Second, they reinforce state licensing and accreditation standards. And third, they place limits on PBM self‑dealing. These laws are fundamentally different than the state laws that this Court considered in Gearhart and Rutledge. Those laws regulated the methodology that plans and PBMs use to calculate drug benefit reimbursements. They were said to apply in certain instances only to ERISA plans, and the law at issue in Rutledge overlapped with two specific Medicare Part D standards. North Dakota's laws do none of these things. They do not apply exclusively to ERISA plans, they do not dictate benefits or bear on plan administration, and they do not impermissibly overlap with any Part D standard. Does it have to be exclusive? It does not have to be exclusive, Your Honor. Let me give you an illustration of when it's not exclusive. I think the case of Greater Washington Board is illustrative there, but it's not helpful to PCMA. In that case, the District of Columbia defined a law on a plan sponsor. It imposed requirements based on the benefits that were provided under an ERISA plan. So DC says to employer, you have to provide the same level of benefits in a workers' compensation plan that you provide in your ERISA plan. So the ERISA plan's benefits were used to define the substantive requirement. Here, nothing in the North Dakota laws impose any requirements based on the existence of an ERISA plan. Every requirement that PCMA quibbles with is a standalone requirement. It exists regardless of whether there's an ERISA plan. And so for that reason, Greater Washington Board is of no help to PCMA. I think the reference to tested issue here is straightforward. They concede that these laws do not apply exclusively to an ERISA plan. So what we're essentially arguing over is whether or not an ERISA plan is essential to the existence of the state law. And it's not because, as I said, this law imposes standalone requirements that don't vary depending on the existence of an ERISA plan. And in this respect... Am I wrong? Doesn't it clearly affect ERISA plans? It refers to third-party payers, doesn't it? It refers to third-party players that can be anyone. It can be an ERISA plan, a non-ERISA plan. But many are going to be ERISA plans. Sure, some will be an ERISA plan, but the Supreme Court has said that that is not sufficient to have a reference to ERISA. Just having an effect on an ERISA plan is not enough. You can go back to first principles in Mackey. There, there was a case where a Georgia law had an express exemption for the state's garnishment law. The Supreme Court struck that out. What about Gearhart and Rutledge, though? So Gearhart and Rutledge are distinguishable because in that case, this Court held that they applied in certain instances only to ERISA plans. That problem is not at issue here. The state laws at issue here apply regardless of whether or not there is any kind of effect on an ERISA plan. I think also, if you're looking... But you don't deny that the laws do impact ERISA plans? Yes, but the laws impacted ERISA plans in Dillingham and Travelers and Dubona, but the Supreme Court has said that that kind of downstream effect on an ERISA plan is insufficient to affect an ERISA plan. Isn't there literal language in Rutledge that says there's a reference to ERISA plans if it regulates a set of entities whose customers are ERISA plans? Sure, but there's also a reference in an earlier case of this Court, Boyle v. Anderson, where there was a Minnesota law that allowed a pass of a 2% tax to pass through to third-party purchasers. And in that case, the term was in fine to include self-insured employee health plans. This is at 68 F. 3rd. 1093, and the pin is at 1098. This Court held, however, that that law did not make a prohibited reference to ERISA because the pass-through applies to all third-party purchasers. So even though a third-party purchaser in that case was broad enough and, in fact, referred to plans, it was not deemed sufficient. So under the logic of PCMA... Boyle is not in any of the briefs here, is it? The case you said, Boyle, is it in the briefs? It's Boyle v. Anderson. No, sorry, it's in the briefs here. It's not, Your Honor. Okay, I thought. You better get us a 28-J letter. Sure, I can get you a 28-J letter on that point. The point, though, is that PCMA's argument will require this Court, if it accepted their construction of Rutledge and Gearhart, to contradict Supreme Court precedent in Dillingham and Travelers, and I haven't heard a good rebuttal to that. It would also require them to contradict this Court's earlier holding in Boyle v. Anderson. I don't presume that this Court knowingly contradicts decisions of the Supreme Court or prior panels of this Court, so there has to be a limiting principle. And I think the limiting principle is to take the panels at their word, that in those cases, in certain instances, the law applied only to ERISA plans. And if you're looking for a second basis to factually distinguish those cases, in each of those cases, the laws made a reference to health benefit plans. That was in Prudential, and that was in Gearhart. And in Rutledge, the laws made a reference to pharmacy benefit plans. There is no reference to plans at issue in these laws. The closest PCMA comes is to identify a reference to plan sponsor. But as the District Court recognized, only two provisions of the law refer to plan sponsor, and they don't impose any requirements on the plan sponsor. And that's a key distinction. The D.C. Circuit in PCMA v. District of Columbia held that where a law doesn't impose any requirements on an ERISA-regulated entity, it doesn't relate to ERISA. Yeah, but this says third-party payers, and that's anything in the world, any entity in the world except a patient and health care provider, that has to include an ERISA plan. Sure, and that can't be the test, Your Honor, because every law of general applicability is broad enough to apply to an ERISA plan. Take Dillingham. In that case, there was an express reference to joint apprenticeship committees. And the parties argue that is inclusive of ERISA plans, and there was no dispute about that. But the Supreme Court said that's not enough, that ERISA reference to preemption doesn't apply because the law is broad enough that it includes both ERISA and non-ERISA entities. But Rutledge says there's no explicit reference in that case, in the law in that case, to ERISA plans, right? The case says that. Yes, it uses the terminology implicit reference to. It says there's only implicit reference like I just did, right? Sure. How can you distinguish Rutledge? I think you have to distinguish Rutledge the way I distinguished Greater Washington Board of Trade, and that is to say that if a state law imposes requirements that vary depending on the presence of an ERISA plan, then it's preempted. But here you don't have that problem. If I can't persuade you that there's a way to distinguish Rutledge and Gearhart, then the best that I can hope for out of this panel is that you're an advocate to the rest of the court because you cannot reconcile Rutledge and Gearhart, as my adversaries are interpreting them, with Supreme Court precedent. What about the term plan sponsor, which I found two or three times here? Sure. The term plan sponsor is used twice. But as I said, it doesn't actually impose any requirements on a plan sponsor. The law at issue says that a pharmacy may disclose to a plan sponsor, and it says that a PBM that owns a pharmacy upon request of the plan sponsor may disclose. I'll point you to a PIN site. Again, not in the briefs, and I apologize. But in PCMA versus District of Columbia, and this is at 613 F3rd, 186 through 187 is the PIN. There, the D.C. Circuit said that when a law refers to a plan sponsor, but it essentially allows a plan sponsor to request a non-ERISA entity to do something, it's not imposing any requirements on a plan sponsor, and the law does not relate to ERISA. So both of those provisions do not present a problem under the Supreme Court's relate to precedent. Really, at the end of the day, what this panel has to decide is whether or not to read Prudential, Gerhart, and Rutledge in harmony with Supreme Court precedent, and I think there are ways to do that. I think this panel can take those decisions at their word, that those laws applied in certain instances only to ERISA plans, and that they included references to health benefit plan and pharmacy benefit plan that are not at issue here. What do you consider the most applicable Supreme Court precedent to this case? I think Dillingham and Travelers are certainly applicable precedents, and then to understand sort of the other side of the bookend, Greater Washington Board of Trade, and I think the key in that latter, the former cases are clear. Having a precedent that is broad enough to include ERISA plans is not enough to have a reference to ERISA, and Judge Grinder, as you were pointing out, okay, so where are the limits if a state doesn't apply exclusively to an ERISA plan? And Greater Washington Board explains those limits. In that case, the requirements themselves have to vary depending on the presence of an ERISA plan. So you're looking to an ERISA plan's benefits to determine the requirements of the state law. And again, here there are standalone requirements that don't vary depending on the presence of an ERISA plan. The Supreme Court's review of Rutledge with the result of that case have an impact on the issues before this point? Certainly PCMA's interpretation of reference to preemption, yes. I think for the rest of the case it's completely distinguishable, and for those reasons it doesn't have any bearing on connection with or Medicare Part D preemption. And as Your Honor is aware, that case is pending. The Solicitor General was invited to file a brief, and as of today the Solicitor General has not yet filed a brief. So what's the deadline? There is no deadline for the Solicitor General. Proceed. So with respect to PCMA's connection with argument, I think you can dispense with this argument as well. To have a forbidden connection with ERISA, the state law must govern a central matter of plan administration or interfere with uniform plan administration. So I'll give you two examples of that. If a state law required an ERISA plan to cover a particular drug, or if it overrided a plan's determination of who's eligible for coverage, those would be examples of interfering with plan administration. But the North Dakota's laws don't do anything of the sort. They regulate the practice of pharmacy, including what information a pharmacist may disclose to patients, what drugs a pharmacist may dispense, they authorize pharmacists to dispense by mail, they reinforce state licensing and accreditation standards, and they limit a PBM's ability to engage in self-dealing, and they impose restrictions on certain fees unrelated to drug benefit reimbursements. So the laws at issue here are fundamentally different than those at issue in Gearhart. That law regulated and interfered with the methodology that ERISA plans and their PBMs use to calculate drug benefit reimbursements. There's no comparable provision here. What about Rutledge? Sure, so Rutledge included an appeal provision that set the price that a PBM could reimburse a pharmacy based on what was available at wholesale, and that was deemed to interfere with the methodology that ERISA plans use to calculate drug benefits. There's no comparable provision at issue here. The disclosure requirements as well, none of them relate to plan administration. The Supreme Court didn't say that any disclosure or reporting law is preempted by ERISA. It said that disclosure or reporting laws that bear on a central aspect of plan administration are preempted. So take the law at issue in Gabelle. That required plans and third-party administrators to report detailed information about claims and plan members to a state database. No comparable provision is at issue here. Authorizing a pharmacist to disclose information upon request to a patient doesn't have anything to do with plan administration. And I'll take a bit of an issue with what my opponent said here. Plan members are interested in these kinds of conversations. They're very interested in price. PBMs oftentimes charge a higher amount than a plan member could obtain if they paid out-of-pocket for a drug. And under the current regime, PBMs preclude the pharmacist from explaining that. So take an example. A generic antibiotic might have a $20 copayment, but the pharmacist could dispense that drug to the patient out-of-pocket for $8. Under the regime that PBMs have set up, the pharmacist is precluded from having that conversation with the patient. That has nothing to do at all with plan administration. And what I will direct you to on the connection with Prong is that Congress anticipated that there would be variation in medical practice standards. It said this in Travelers. It reaffirmed it in De Bono and in Dillingham. And yet, even though there would be variation in practice standards that would ultimately affect costs borne by ERISA plans, that was not deemed enough to trigger preemption. I'll turn, if I may, to PCMA's arguments under Medicare Part D. PCMA's first argument, which I heard them continue to defend here, is that Medicare Part D preempts the entire field of state regulation of Part D plans, even where there is no congressional or CMS standard in the area that the state has regulated. This Court should reject that broad interpretation for four reasons. It's contrary to this Court's holding in Rutledge. It contradicts the statute's text. It's inconsistent with what CMS and every other court has said, and it's fundamentally inconsistent with concepts of federalism and the presumption against preemption. The holding in Rutledge is the holding in Rutledge. It was necessary to the decision in that case. It said you had to have a standard under Part D and overlap with a state standard. And even if you want to ignore that and claim that it's not a holding, it's contrary to the text of the statute. The statute is tied to the existence of federal standards that supersede state laws acting with respect to a Part D plan. There is no preemption unless there is a federal standard on point under the text of the statute. CMS and every other court have said as much as well. CMS has said that although the Congress included broad preemption rules, we do not believe that the Congress intended for each and every state requirement applying to Part D plans to become null and void. Before we go to the agency, what's the status of the savings clause in this case? Sure. So there are two savings clauses at issue here. The first is the general savings clause that applies across all of Medicare, and that is a provision that provides that, in essence, nothing in this chapter should be construed to authorize a federal officer or employee to engage in the supervision of the practice of medicine or the manner in which medical services are provided. That it is as much a limitation on federal officers as it is... Is health services also mentioned there? It is mentioned there. That's at 42 U.S.C. Yeah, yeah, yeah, but what are the words? You read me every word with medicine and medical services. What are the words with health services? It includes the provision... The context. Go ahead. The provision of health services is defined. Okay. Thank you very much. Proceed. Now, when Congress enacted Part D, it included Part D within the subchapter that's governed by the savings clause. There's also a licensing exception under the preemption clause, and the licensing exception provides that preemption is not triggered if a state law relates to state licensing laws. And I think that many of the provisions at issue here regulate licensing of pharmacists. My question is, what's the status of it? Is it offense, pleaded, not pleaded, waived by you? That was my point. Sure. That relates, Your Honor, I believe, to a different issue, which is the ERISA savings clause. Okay. The ERISA savings... It's not this savings clause. I was confused. Thank you. Proceed. Sure. So the savings clause on ERISA, and I'll briefly address that argument, that issue has been preserved. That issue is not in an affirmative defense. It's an issue of whether or not there's still preemption, and typically the proponent of preemption bears the burden of establishing as much. There's no pleading requirement as they concede in a footnote. We raised the argument in a cross-motion for summary judgment. It wasn't relevant to the district court's decision because the district court held that the laws were not preempted at all. It's also not an alternative basis for affirmance because it doesn't result in the complete affirmance of the judgment below. If this court deems the state law as preempted by ERISA, the savings clause would merely operate to save those laws with respect to insured plans. So it's not an alternative basis for affirmance because it's a narrower judgment than what the district court provided. And this court has said that it is reluctant to impose obligations on appellees to raise all possible issues in an appellee's brief. And I think for good reasons, this case already reached the state to the limit of its briefing to require it to brief an issue that was never decided below by the district court because it was obviated by the decision of the district court should not be required of an appellee. I think it's preserved and it's a basis for remand if this court so chooses. What I'll say... The Part D savings clauses have clearly been in the case in the beginning. Yes. Proceed. As has this one, though. We cross-moved for summary judgment on it. But I'll briefly address their backup arguments under Part D. The noninterference clause, which they've cited, that clause CMS has clarified is limited to payment-related contractual terms. And unlike the laws in Gearhart and Rutledge, this law doesn't have anything to do with drug price payment terms. And PCMA's argument under that clause is flawed because the noninterference clause is principally a limitation on the federal government. So if you accept their argument that the noninterference clause relates to nonpayment terms, then neither CMS nor the states can regulate nonpayment terms of PBM pharmacy contracts. As for the Any Willing Provider clause, that clause looks to state standards to define what is reasonable and relevant for a PBM to impose. So CMS specifically looked at the North Dakota laws at issue here, and they said that they were acceptable because what CMS does is it defines a PBM's maximum standards, what's permissible as reasonable and relevant, based on state practice standards. At the end of the day, what PCMA is arguing here is for preemption of ERISA and Medicare, even in those areas where the statutes have nothing to say. And as Justice Thomas said in Dillingham, this would produce an unsettling result because what it would mean is that PBMs would operate in a space that is unregulated by the federal government under either ERISA or Medicare Part D, but the states are still somehow precluded from regulating under their general police powers. And to essentially have preemption here, they have to advance a series of limitless arguments. For that, I'll rest. Thank you, Your Honor. Thank you, Mr. Smith. Mr. Baker, your rebuttal. Judge Benton, I can answer your question. The SG, we presume, will file their brief in mid to late December. Thank you. There's an overarching issue, and we've heard this from the state over and over and over again, that this is a regulation of pharmacies, and the North Dakota challenge statutes involve licensing of pharmacies. That's just incorrect. These statutes regulate PBMs. They have effects on pharmacies. Pharmacies can take the benefit of it. And I would cite for that proposition, and we put this in our brief, Kentucky Association of Health Plans v. Miller, which deals with the insurance exception or insurance savings clause to a risk of preemption. And there, Justice Scalia, writing for the court, noted that any willing provider statute that required a health plan to use any willing provider affected the providers, but it didn't regulate them. And that's exactly what we have going on here. This affects pharmacies. They get the benefit of this, but this is a regulation of PBMs that is not actually found in the licensing statute, which is a completely separate provision of the North Dakota Code. So this is a regulation of PBMs. I've never thought about this to this moment. Tell me, are PBMs licensed?  Thank you. Yes, Your Honor. Your Honor, and again, this goes to the Medicare licensing exception. The Medicare licensing exception only applies to the licensing of Medicare plans. It doesn't apply to licensing of non-Medicare entities. And then as far as the savings clause in Medicare that this law is not going to regulate any activity of any federal law, does not authorize any federal officer to regulate medical practices, that speaks to the activities of the federal executive branch. It does not speak to, it's not a savings clause for Medicare Part D preemption. If there are no further questions, I will yield the floor. Thank you, Mr. Baker. Thank you also, Mr. Smith. The court appreciates all counsel's preparation for this case and the briefing which you submitted and the argument you provided.